Insider Review  May it please the Court, my name is Carol Lielewski, I represent Craig Carrington on this appeal. Before I get to the specific circumstances that make this case extraordinary I'd like to address the floodgates problem that Judge Callahan raised. I'd suggest that the gatekeeping concerns that the Court would have are not necessarily appropriate when we're talking about a District Court's request. Those should apply more frequently to defendants who are more likely to raise anything and everything they can to alleviate their sentencing. District courts, on the other hand, are not in the same position. They're going to use their discretion and they, I think, will not flood the courts with requests if relief is granted in this case. Secondly, to the extent floodgates were opened, they were opened by Crawford. Crawford came down and said, well, yes, there are circumstances where we can recall our mandate because of the extraordinary nature of the case. And so this case wouldn't further open the floodgates, but it would put a refinement on those, the circumstances under which the mandate can be recalled. In Carrington's case, we're not asking for relief solely on the basis of the ---- Let me, I guess what, let me ask me, let me ask you if I'm understanding this correctly. You're saying that if a District Court essentially, this wouldn't prevent an appeal, but if he said, look, I wouldn't give you any different sentence, I'm perfectly at peace with the sentence I gave you back then, so don't waste your time recalling the mandate, then that would be an easy issue for an appellate court to say it's not extraordinary circumstances? I think under those circumstances, that one ground wouldn't be extraordinary. Whether the defendant could come up with other extraordinary circumstances would depend on the facts of the case, but you wouldn't have the extraordinary circumstance that we have in our case. We have not only Judge Bryant's plea to this Court that it allow him to do justice, but we also have at sentencing two things. We have, first, the Crawford factor at sentencing, where the judge bemoaned the length of the sentences, saying that these sentences are tantamount to life sentences that you would get in State court, and that's what happened in Crawford. Crawford, the judge, agonized about the length of the sentence that he had to impose. But even beyond that, we have Judge Bryant actually, apparently foreshadowing the decision in Blakely. Judge Bryant emphasizes his frustration with the mandatory nature of the guidelines. He has been – he had been practicing – practicing judge for 21 years at that point, and he said, here come along the guidelines, and they take away my discretion. I think that's wrong. I don't think I have any choice. I have to sentence you anyway under these guidelines. And then 15 years later, we have the Supreme Court saying, well, yes, these guidelines cannot be mandatory. They must be discretionary or they're unconstitutional. So aside from him saying, I wouldn't impose a sentence if I didn't have to because it's very long, he also said – he foreshadowed Booker, I'm sorry. He foreshadowed Booker by saying, look, this – these guidelines are really how we should be sentencing people. We should have more discretion. So those are the three factors in this case. And in terms of looking at, you know, a flood of cases, I sort of view the factors as narrowing the neck of a funnel. You know, we start with all the defendants who have been sentenced under the guidelines and up until Blakely, and that's a pretty wide pool. But then when you add each factor of extraordinary circumstance, you narrow it and narrow it, we have the judge saying, these sentences are too long. How many – you know, we don't know the number of cases that happened in its sentencing, but it had to have happened back when they were originally sentenced. It can't have been an afterthought. So that narrows it. And then we have the judge saying, and these guidelines should not be mandatory. So that narrows it further. And finally, we have this tiny little neck for defendants to get through where the district court actually says, please, court of appeals, please let me do the right thing, because I think that this person was wrongly sentenced and I'd like to change that. Okay, very good. Any questions? Thank you. Very good. You know what Franklin Roosevelt said were the three ingredients of a good talk? Be short, be sincere, be seated. You'd be right. Well, Your Honor, I will attempt to follow that as well, but I do have – I would like to hear your response. I do have a couple of things that I would like to add, if I might. I'm a stand-up comedian, I'm afraid. And there is a – the case of Mr. Carrington has been final now for 14 years, and we are back before this Court asking for the mandate to be recalled in the original case. I would point out that in Nebius v. Sumner, this Court has said that it's – that a mandate should be recalled when there's good cause in unusual circumstances to justify modification or recall of its original judgment. So there is nothing here that points to an error in the Court's judgment, I might suggest, because the only question in Carrington's case with respect to sentencing was whether or not the conspiracy continued into the time period when the sentencing guidelines became applicable. So that is – that's another aspect of why this case is not extraordinary. I do understand that Judge Bryan is frustrated with the lengthy sentences and would very much like to revisit the lengthy sentences. But I think the problem comes back to he is not alone. He was not – never alone among judges in thinking that particularly the drug guidelines were – resulted in extraordinarily long sentences. And it seems to me that we are – in this case, if this Court were to find that the mandate should be recalled, that we are simply avoiding the retroactivity rules here on cases that were long since final in situations where at the end of the day, these defendants are no different than other defendants who are also faced with long sentences and were sentenced by judges who are not happy with those guidelines. You know what I think? I think, you see, Judge Bryan has been around a long time. He's been – he started before we had these guidelines. And, you know, I suspect that many, many of the judges who came on after the guidelines were in effect are perfectly happy with them. You may very well be right, Your Honor. Yeah. You know, that's the system they grew up with. And, you know, the system that they really – once the guideline is established, they don't – you know, they don't have a lot of room. And so, you know, they're comfortable with it. And sadly, that's the case. Okay? Let's see what happens. Well, if I might add one final point that I forgot to add, and that is, ironically, if one looks at the sentencing of Mr. Carrington, Judge Bryan, although there was a motion at that point for a downward departure based on overrepresented criminal history, didn't grant that departure either. So with that, I will sit down. Thank you for your argument. You know, he may do very little when it comes back. He'll be exercising his own discretion and not – you know, with the telephone book of guidelines, the computer and all that comes up with. And I would echo your point, Your Honor, because in Judge Bryan's order, he said these defendants may or may not receive higher sentences upon resentencing, but at least they'll be sentenced under fair circumstances. And I would just like to address the government's point about the recall request being grounded in an infirmity from the previous decision. The case Nebios is distinguishable from this case because there, the defendant sought to recall the mandate of the first 2254 decision that this Court had made for the reason that since that decision was made, he went back to State court. He sought relief in State court. The State didn't respond to his petition in State court for five years, even though they were ordered to. So he had this extended delay. During that five years, the Supreme Court handed down the decision in McCleskey v. Zant, which said – which cut off the successive or second habeas petitions. So he – when he wanted to go back to Federal court, he couldn't because it was second or successive. So what he asked this Court was, recall the mandate so that I don't have – so that because of that delay of the State, it's unfair, and now I have McCleskey and before I wouldn't have had McCleskey. And the Ninth Circuit, rightly so, I think, said, well, if we recall the mandate under those circumstances, we're not talking about the actual decision we made. We're just talking about a way for you to get relief from these laws that have passed since you happen to have had your first day in court, and we're not going to do that. That's not grounds to get relief. In this case, we're not looking to escape the or circumvent the AEDPA. The AEDPA doesn't even come up in this case because it applies to prisoners' petitions, and what we have here is Judge Bryan's request to this Court directly. Moreover, I would just like to point out that the Crawford appeal did not involve a sentencing issue. Crawford was – this Court recalled the mandate in Crawford, but the appeal in that case was whether the Court should have suppressed the evidence, and there was a 404b motion as well that the defendant was appealing. So this would not be against precedent to recall the mandate in this case. Thank you.
judges: Pregerson, Noonan, Callahan